UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SAFET STAFA, TOLLBROOK, LLC,
a Michigan limited liability company,
TOLLBROOK West, LLC,

a Michigan limited liability company,
TOLLBROOK North, LLC,
a Michigan limited liability company, and
ARBAN STAFA,

  Plaintiffs,

v.

CITY OF TROY, a Michigan municipal
corporation,

  Defendant.

Case No: 2:24-cv-10419

Hon. Mark Goldsmith
Magistrate Anthony P. Patti

_____/

CINDY RHODES VICTOR (P33613)
The Victor Law Firm, PLLC
29777 Telegraph Rd., Suite 2410
Southfield, MI 48034
(248) 905-3990
cvictor@victorfirm.com

LORI GRIGG BLUHM (P46908)
Troy City Attorney
JULIE QUINLAN DUFRANE (P59000)
Assistant City Attorney
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320
j.dufrane@troymi.gov

_____/

## **DEFENDANT CITY OF TROY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR IN THE ALTERNATIVE A MOTION FOR A MORE DEFINITIVE STATEMENT UNDER FED. R. CIV. P. 12(e)**

## **ORAL ARGUMENT REQUESTED**

## <u>CERTIFICATIONS</u>

1. Pursuant to E.D. Mich. L.R. 7.1(a) and this Court's Motion Practice Protocol,

   Defendant City of Troy states as follows:

   > On May 3, 2024 the undersigned counsel certifies that she personally spoke to opposing counsel, Cindy Victor on the telephone regarding the nature of this motion and its legal basis for the purpose of seeking concurrence in relief sought; concurrence was expressly denied.

   > <u>s/Julie Quinlan Dufrane</u>
   > Julie Quinlan Dufrane (P59000)
   > Assistant City Attorney
   > Attorney for Defendant City of Troy

2. Pursuant to this Court's Order dated March 2, 2024, Defendant City of Troy

   states as follows:

   > Local Rule Certification: I, Julie Quinlan Dufrane, certify that this document, including the attached Brief in Support, complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

   > <u>s/Julie Quinlan Dufrane</u>
   > Julie Quinlan Dufrane (P59000)
   > Attorney for Defendant City of Troy

## <u>DEFENDANT CITY OF TROY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR IN THE ALTERNATIVE A MOTION FOR A MORE DEFINITIVE STATEMENT</u>

Defendant City of Troy moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff's Complaint because Plaintiff has failed to state a claim upon which relief can be granted. In support of this motion, Defendant states as follows:

1. Plaintiff Sam Stafa is the principal agent for Plaintiff entities Tollbrook, LLC ("Tollbrook"), Tollbrook West, LLC ("Tollbrook West"), and Tollbrook North, LLC ("Tollbrook North"). (Complaint at ¶ 7).

2. Plaintiff Tollbrook submitted an application seeking to conditionally rezone property on or about June 14, 2016. (Complaint at ¶ 10).

3. Tollbrook's application was denied by Troy City Council on April 10, 2017. (Complaint at ¶ 31).

4. Plaintiff Tollbrook filed a lawsuit in this Court on May 4, 2017 alleging, among other claims, a violation of Plaintiff's substantive due process rights. Case number 17-11417. (Complaint at ¶ 36).

5. This Court dismissed Tollbrook's Complaint.  The Sixth Circuit Court of Appeals affirmed the dismissal. (Exhibits A and B).

6.  Plaintiffs' instant Complaint alleges that since Tollbrook filed its first lawsuit, they have been subject to multiple retaliatory and discriminatory actions by the City of Troy. (Complaint at ¶¶ 37, 38).

7.  The allegations detailed in the Complaint are associated with the application process for several different development projects proposed by Plaintiffs at various times since 2016. Some of these projects were denied while some of these projects were approved as indicated by the below chart:

| Project Name | Result | Date |
|---|---|---|
| Tollbrook West's Alpine rezoning request form-based district BB. (Complaint at ¶ 39). | Denied | July 22, 2019 (Complaint at 46). |
| Tollbrook's McClure rezoning request form-based district BB. (Complaint at ¶39). | Denied | July 22, 2019 (Complaint at 46) |
| Sam Stafa/Tollbrook North's Crooks Road Townhomes site plan application form-based district NN-I. (Complaint at ¶ 89). | Denied | November 10, 2020 (Complaint at 107). |
| The Westington site plan application form-based district NN-I. (Complaint at ¶ 77). | Approved | December 8, 2020 (Complaint at 111) |
| Hills West site plan application form-based district NN-I. (Complaint at ¶ 130). | Approved | January 24, 2023 (Exhibit C). |
| Westington Phase II site plan application form-based district NN-I. (Complaint at ¶ 130). | Approved | February 14, 2023 (Exhibit D). |

8.  Defendant City of Troy regulates rezoning requests through its Zoning Ordinance, Title V, Chapter 39, Article 16 of the Troy City Code.

9.  Defendant City of Troy regulates site plan applications through its Zoning Ordinance, Title V, Chapter 39, Article 8 of the Troy City Code.

10. Defendant City of Troy regulates form-based districts through its Zoning Ordinance, Title V, Chapter 39, Article 5 of the Troy City Code.

11. Chapter 39 of the Troy City Code was adopted by the Troy City Council on April 18, 2011 with minor amendments effective as of March 24, 2016[1].

---

[1] Link to City of Troy's Zoning Ordinance
https://cms6.revize.com/revize/citytroymi/Departments/City%20Attorney/Code%20and%20Charter/Code%20Table%20of%20Contents/CH039%20-%201%20Zoning%20Ordinance%20(effective%2003-23-2023).pdf

12. Plaintiff's complaint should be dismissed because it fails to state a claim upon which relief may be granted. As more fully explained in the attached brief, Plaintiffs' allegations of adverse actions do not amount to retaliation under the First Amendment, and their allegations of discrimination do not amount to a violation of their Equal Protection Rights.  In the alternative, Defendant requests this Honorable Court grant its request for a more definitive statement under FED. R. CIV P. 12(e).

Dated: May 3, 2024          s/Julie Quinlan Dufrane
                            JULIE QUINLAN DUFRANE (P59000)
                            Attorney for Defendant City of Troy
                            500 W. Big Beaver Road
                            Troy, MI 48084
                            (248) 524-3320
                            J.Dufrane@troymi.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SAFET STAFA, TOLLBROOK, LLC,          Case No: 2:24-cv-10419
a Michigan limited liability company,
TOLLBROOK West, LLC,                  Hon. Mark Goldsmith
a Michigan limited liability company, Magistrate Anthony P. Patti
TOLLBROOK North, LLC,
a Michigan limited liability company, and
ARBAN STAFA,

     Plaintiffs,

v.

CITY OF TROY, a Michigan municipal
corporation,

     Defendant.

_____/

CINDY RHODES VICTOR (P33613)        LORI GRIGG BLUHM (P46908)
The Victor Law Firm, PLLC           Troy City Attorney
29777 Telegraph Rd., Suite 2410     JULIE QUINLAN DUFRANE (P59000)
Southfield, MI 48034                Assistant City Attorney
(248) 905-3990                      500 W. Big Beaver Road
cvictor@victorfirm.com              Troy, MI 48084
                                    (248) 524-3320
                                    j.dufrane@troymi.gov

_____/


**<u>DEFENDANT CITY OF TROY'S BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR IN THE
ALTERNATIVE A MOTION FOR A MORE DEFINITIVE STATEMENT</u>**


**<u>ORAL ARGUMENT REQUESTED</u>**

## Concise Statement of the Issues

The City of Troy has been defending a series of lawsuits involving most of the Plaintiffs named in this instant lawsuit since 2016 when Plaintiff Tollbrook, LLC ("Tollbrook") filed its first application with the City of Troy seeking to conditionally rezone three parcels of land located on McClure Road in the City of Troy. (*See* Complaint at ¶¶ 1-36). In the last eight years, Plaintiffs have relied on at least four different law firms and seven different attorneys to file seven different lawsuits against the City, including the instant one.  These lawsuits have been litigated in U.S. District Court, the United States Sixth Circuit Court of Appeals, Oakland County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court.

The instant lawsuit is a two count Complaint alleging (1) a First Amendment retaliation claim and (2) a disparate treatment claim, both of which are asserted against the City of Troy alone under 42 U.S.C. § 1983.  The crux of Count I in this current lawsuit is Plaintiffs' assertion that since Plaintiff Tollbrook filed its first lawsuit against the City of Troy on May 4, 2017, the City of Troy has allegedly "stopped and delayed and hindered any building project" proposed by "any of the plaintiffs…in retaliation for plaintiffs having exercised their First Amendment rights by seeking redress through the courts." (Complaint at ¶ 37).  Plaintiffs allege further that the City of Troy "has made it clear that it will never let plaintiffs

1

develop their properties." (Complaint at ¶ 178). Setting aside Plaintiffs' creative and untenable First Amendment theory of retaliation, the allegations within the Complaint itself contradict these allegations.  The City of Troy has, in fact, approved several of Plaintiffs' development projects.

Plaintiffs' disparate treatment claim is not clearly articulated in the Complaint. Plaintiffs allege in count II that they have been treated differently than other property owners and developers, without providing any specifics. (*See* paragraphs 94, 129, 135, 136) They allege further that they have been "treated adversely and differently [ ] based on plaintiffs' religion." (Complaint at ¶ 200). Plaintiffs Arban Stafa and Sam Stafa reveal in the complaint that they are Muslim, but even if this Court were to charge the Defendants with advanced knowledge of Plaintiff's religious affiliation, Plaintiffs do not articulate who, what, where, when, or how there was any religious discrimination by the Defendant City or its officials. (Complaint at ¶¶ 1, 5).

Plaintiff's Complaint falls well short of stating any claims for which relief can be granted, and Defendant seeks dismissal of it under Fed. R. Civ. P. 12 (b)(6).

## **Most Controlling Authority**

*EJS Properties v. City of Toledo, et al,* 698 F.3d 845 (6th Cir. 2012)

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)

*Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)

Michigan Planning Enabling Act, MCL 125.3801 *et seq*., specifically MCL 125.3831-3851

Troy Zoning Ordinance, Chapter 39, Sections 5, 8 and 16

### Summary of the Facts

For purposes of Defendant's motion to dismiss, the relevant factual allegations contained in Plaintiffs' Complaint are required to be construed by this Court as true. Giving Plaintiffs the benefit of the doubt, the first 168 allegations in the Complaint are factual recitations, but the remaining paragraphs are vague, unspecified statements or legal conclusions, and as a result, the Court does not need to accept these as true.

The Complaint details the efforts taken by each Plaintiff since 2016 to develop certain property interests in the City of Troy.  Since 2016, some of their development projects have been approved by the City of Troy, and other proposed projects have been denied.  The denials have resulted in multiple lawsuits[2] or threats of lawsuits filed against the City of Troy by Plaintiffs Tollbrook, Tollbrook West, LLC ("Tollbrook West"), and Sam Stafa.[3]  Through each of these lawsuits,

---

[2] A chart of the history of litigation between these parties is offered for ease of reference. (Exhibit E).

[3] Plaintiff Tollbrook North has not previously been a named litigant, but Sam Stafa's lawsuit was brought on behalf of Tollbrook North concerning the project known as Crooks Road Townhomes. Plaintiff Arban Stafa has not previously sued the City of Troy.

Plaintiffs have challenged Troy's denial of their proposed developments, and also Troy's Zoning Ordinance.

Plaintiffs' Complaint includes situations where they claim the City took retaliatory adverse actions against them since the filing of the first lawsuit in 2017. (Complaint at ¶¶ 36-37). Plaintiffs' retaliation allegations are summarized as follows:

1. The denial of their ***straight*** rezoning applications, which were filed after this Court's decision concerning their ***conditional*** rezoning request for parcels on McClure and Alpine. (*See* Complaint at ¶¶ 37-49).

2. The denial of their development project known as Crooks Road Townhomes. (*See* Complaint ¶¶ 50-76, 89, 101, 107-110).

3. The alleged improper removal of a sign that was placed on the site of their approved development known as The Westington. (*See* Complaint at ¶¶ 77-83).

4. COVID-19 related delays associated with the required public hearing for one of their proposed projects, The Westington, which was ultimately approved. (*See* Complaint at ¶¶ 84-88, 90-111).

5. The City Council's appointment of two Planning Commission members, who Plaintiffs claim were antagonistic. (*See* Complaint at ¶¶ 112-115).

6. A zoning text amendment ("ZOTA 255") passed by the Troy City Council which they allege adversely affected two of their projects, Hills West and Westington Phase II. These two projects were, however, ultimately approved. (*See* Complaint at ¶¶ 116-124, 130-133, 141).

7. A minor building permit dispute that was satisfactorily resolved. (*See* Complaint at ¶¶ 125-129).

8. City Administration's request to have all communications with the City of Troy sent through legal counsel while complaints and lawsuits were pending. (*See* Complaint at 134-137).

9. The City's current draft of proposed amendments to its Master Plan, including "adjustments" to the future land use map. (*See* Complaint at ¶¶ 138-140; 159-164).

10. The failure of the City's planning department to make "recommendations" for all proposed developments. (*See* Complaint at ¶¶ 142-157).

11. Allegedly "unprofessional conduct" of one city employee. (*See* Complaint at ¶ 158).

12. The City's return (without processing) of Plaintiff's proposed ***straight*** rezoning applications in December of 2023 because Plaintiffs were seeking a second chance to rezone the parcels on McClure and Alpine while there is a

case pending on this very issue. (*see* item number one above). (*See* Complaint at ¶¶ 165-168).

These allegations, even taking them in the light most favorable to Plaintiffs, do not support a First Amendment retaliation claim or an Equal Protection claim of disparate treatment. Plaintiffs' Complaint cannot stand on these allegations, and it should be dismissed for failure to state a claim.

## <u>Argument</u>

**Standard of Review**: Defendant City of Troy seeks dismissal of Plaintiff's lawsuit under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In reviewing a motion to dismiss, courts primarily consider the allegations in the complaint. This Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." (*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). This Court, however, "is not bound to accept as true legal conclusion[s] couched as factual allegation[s]." (*Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Nor is this Court limited to the four corners of the Complaint. It may consider matters of public record without converting the motion into one for summary judgment. (*Amini v. Oberlin Coll*., 259 F.3d 439, 502 (6th Cir. 2001) (*quoting Nieman v. NLO, Inc*., 108 F.3d 1546 (6th Cir. 1997)).

6

## I.   **Plaintiffs' First Amendment Retaliation Claim:**

### A. *Plaintiffs have not established a First Amendment Retaliation Claim because the alleged subsequent retaliatory actions were part of prior lawsuits.*

A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in a protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two, that is the adverse action was motivated at least in part by the plaintiff's protected conduct.  (*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish an adverse action for First Amendment retaliation purposes, "a plaintiff must show that the action 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" (*Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007)). "The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote.'" (*Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 724 (6th Cir.2010) (quoting *Thaddeus–X,* 175 F.3d at 396). In the First Amendment context, however, Courts have held that "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute a sufficient adverse action], which may include harassment or

publicizing facts damaging to a person's reputation." (*Id*). Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact. (*Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir.2002)). Nevertheless, when a plaintiff's alleged adverse action is "inconsequential," resulting in nothing more than a "de minimis injury," the claim is properly dismissed as a matter of law.

In the instant Complaint, Plaintiffs fail to articulate the protected actions that have been allegedly suppressed.  Plaintiffs have certainly not been precluded from challenging any City denials of development proposals through litigation, and the inclusion of these actions in this lawsuit, which have already been decided or are pending in other courts, is insufficient to establish a claim.  Plaintiffs also complain of other actions, but these complaints are not protected actions that support a retaliation claim.  In fact, Plaintiffs are essentially seeking to relitigate the prior lawsuits and have failed to assert any subsequent adverse actions that are in retaliation or otherwise capable of sustaining a First Amendment retaliation claim. Plaintiffs' Complaint fails to state a claim for which relief can be granted, and their Complaint should be dismissed under FED. R. CIV. P. 12(b)(6).

## 1. **Plaintiff Tollbrook's first dismissed lawsuit**

The first 36 paragraphs of Plaintiffs' instant Complaint rehashes, restates, and realleges the same set of facts alleged in Tollbrook's first lawsuit against the City of

Troy filed in this Court in 2017. (*See* Complaint at ¶¶ 7-36).  Plaintiff Tollbrook's

first case was assigned case number 17-11417 and decided by this Honorable Court,

and affirmed by the Sixth Circuit Court of Appeals.  (Exhibit F, Complaint dated

May 4, 2017). That Complaint alleged a violation of Plaintiff Tollbrook's

substantive due process rights arising out of Defendant Troy's denial of Tollbrook's

application seeking to conditionally rezone certain property located on McClure

Road in the City of Troy. Troy's Motion to Dismiss filed under FED. R. CIV. P.

12(b)(6) was granted and on the subsequent appeal, the dismissal was affirmed.

### 3. **Plaintiff's instant Complaint**

The next 133 allegations of Plaintiff's current complaint, paragraphs 37

through 169, are Plaintiffs' attempt to enumerate "adverse actions" allegedly taken

against the Plaintiffs subsequent to the filing of Plaintiffs' first lawsuit.  However,

these allegations do not rise to the level of adverse actions cognizable as retaliatory

which would be sufficient to form the basis of a First Amendment retaliation claim.

For example, the failure to provide a recommendation for every proposed

development is not something that is guaranteed to Plaintiffs, especially since this is

the rule for all proposed items and all proposed developers appearing before the

City's Planning Commission.  Therefore, Plaintiffs' Complaint fails to state a First

Amendment retaliation claim, and the Complaint should be dismissed as to Count I.

> **a. *Plaintiffs' Complaint alleges issues that have been or
> are currently being litigated in the Michigan state court***

*system and do not constitute adverse actions cognizable*
*as a First Amendment retaliation claim.*

As noted above, the City has been embroiled in six prior lawsuits with most of the Plaintiffs named in this instant lawsuit. The allegations contained in paragraphs 37 through 76, and paragraphs 89, 101, and 107-110 of the instant Complaint rehash and re-state the allegations already decided in the state court lawsuits. These allegations can be summarized as follows:

1. Issues related to Troy City Council's denial of Plaintiff Tollbrook and Tollbrook West's requests to rezone three parcels located on McClure Road and two parcels on Alpine Road. (*See* Complaint at ¶¶ 37-49).

2. Issues related to the denial of Plaintiff Sam Stafa's site plan application concerning the project known as Crooks Road Townhomes. (*See* Complaint ¶¶ 50-76, 89, 101, 107-110).

Plaintiffs' allegations in the instant Complaint are precluded by the legal doctrine of *res judicata* as more fully explained below.

### i.    *Tollbrook, LLC and Tollbrook West LLC v. City of Troy*

The allegations contained in paragraphs 37-49 of Plaintiffs' instant Complaint concern issues associated with the denial of Tollbrook and Tollbrook West's rezoning applications, which were denied by Troy's City Council on July 22, 2019. (Complaint at ¶ 46). This subsequent application submitted by Tollbrook[4] was

---

[4] Tollbrook West had not previously applied for conditional rezoning of the Alpine parcels.

distinct from its first denied and litigated action because Tollbrook was seeking a *straight* rezoning, which is different than *conditional* rezoning. However, Plaintiffs' challenge to the *straight* rezoning request cannot form the basis of a First Amendment retaliation claim because Plaintiffs Tollbrook and Tollbrook West also litigated this matter in the state court, after Plaintiffs expressly fought against federal court assumption of jurisdiction.

After receiving adverse decisions from the state trial court on the *straight* rezoning requests, Plaintiffs filed appeals, which are currently pending in the Michigan state court. (Exhibit G).  In addition to the substantive due process claims challenging the denied rezoning requests, Plaintiffs also unsuccessfully pursued a state court appeal of the Troy Zoning Board of Appeals' decision denying Plaintiffs' request for a land use variance, which would have allowed for Plaintiff's proposed developments if approved.   The opinion denying Plaintiff's requested relief in the Zoning Board of Appeals matter was issued on September 22, 2020, (Exhibit H, Opinion and Order affirming Troy ZBA).  The trial court's decision denying Plaintiff's request for relief, based on an alleged arbitrary and capricious *straight* rezoning denial, was granted on October 25, 2023, and is attached as Exhibit I.  This decision is currently on appeal to the Michigan Court of Appeals. (Exhibit G, claim of appeal).

Plaintiffs Tollbrook and Tollbrook West are estopped from asserting First Amendment and Equal Protection claims in this case because they could have asserted those claims in the prior and pending lawsuits involving the parties.

       *ii.*       ***Sam Stafa v. City of Troy***

The allegations contained in paragraphs 50-76, 89, 101, and 107-110 of Plaintiffs' instant Complaint concern issues associated with the denial of a site plan application filed by Plaintiff Sam Stafa as resident agent of Plaintiff Tollbrook North for a project known as Crooks Road Townhomes. This alleged adverse action also cannot form the basis of a First Amendment retaliation claim because Plaintiff Stafa had a full and fair opportunity to litigate the denial in the State of Michigan's court system.

The Troy Planning Commission denied the site plan application for this project on November 20, 2020. (Complaint at ¶107).  Then, the Troy Zoning Board of Appeals affirmed the denial of the site plan application. (Complaint at ¶ 110).

Following these decisions, Plaintiff Sam Stafa filed a Complaint for Writ of Mandamus in Oakland County Circuit Court. Plaintiff Stafa's Complaint sought either a writ of mandamus compelling the Troy Planning Commission to grant preliminary site plan approval for the Crooks Road Townhome project or superintending control compelling the Troy ZBA to reverse its decision to affirm the Planning Commission's denial.  The Oakland County Circuit Court dismissed

this Complaint. (Exhibit J).  Plaintiff Stafa then appealed to the Michigan Court of

Appeals where the lower court's decision was affirmed. (Exhibit K). Plaintiff Stafa

subsequently asked for relief from the Michigan Supreme Court, which was

denied. (Exhibit L).

Following this, the denial of Plaintiffs' Crooks Road Townhome project

cannot serve as the basis of First Amendment retaliation claim because it is also

barred under the legal doctrine of *res judicata*.   *Res judicata* and *collateral*

*estoppel* are legal doctrines that prevent a party from relitigating a claim or issue.

Courts use the doctrine of *res judicata* to prevent multiple suits litigating the same

issue or cause of action. *Res judicata* provides that federal courts must give state

court judgments the same effect the rendering state court would give them.

(*Hutcherson v. Lauderdale Cnty., Tennessee,* 326 F.3d 747, 755 (6th Cir. 2003)).

R*es judicata* incorporates both claim preclusion and issue preclusion. The

rule of claim preclusion is that a valid and final judgment on a claim precludes not

only a second action based on that claim or any part of that claim, but also prevents

a party from re-litigating issues that could have been raised in the earlier action.

(*Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 880 (6th Cir.1997)).

Plaintiffs Sam Stafa and Tollbrook North are estopped from asserting these

First Amendment and Equal Protection claims in this instant case because to a

certain extent they did, could have or should have brought them in the prior

lawsuit. The issue of whether the Crooks Road Townhome site plan application was properly denied was resolved in Troy's favor and resulted in the dismissal of Plaintiffs' case.  That issue was fully litigated in Michigan's state court system. In other words, the state court has reviewed the basis of the denials and determined that these denials were justified. The fact that Plaintiff Stafa had a full and fair opportunity to litigate the denial of the Crooks Road Townhome project in the Michigan state court system means that he cannot use this denial to form the basis of a First Amendment retaliation claim.

**B. *The allegations in Plaintiffs Complaint that are not related to the prior lawsuits do not rise to the level of adverse actions sufficient to sustain a First Amendment retaliation claim.***

**1. <u>Plaintiffs have not alleged an adverse action concerning their project known as The Westington because this project was approved by the Troy Planning Commission on December 8, 2020.</u>**

The allegations contained in paragraphs 77-88, 90-100, 102-106, and 111 of Plaintiffs' instant Complaint concern issues associated with Plaintiffs' project known as The Westington.  Despite the COVID delays identified by Plaintiffs in these paragraphs, this development project was ultimately approved by Troy's Planning Commission on December 8, 2020. (Complaint at ¶ 111). This Court can take judicial notice[5] of the fact there was a global pandemic during the time frame

---

[5] Under Federal Rule of Evidence 201(b), a judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the

when Plaintiffs submitted their application in December of 2019 (Complaint at ¶ 77) and then received approval on December 8, 2020. (Complaint at ¶ 111). Plaintiff's allegations associated with paragraphs 77-88, 90-100, 102-106, and 111 of the instant Complaint do not sufficiently allege an adverse action.

### 2. **Plaintiffs have not alleged an adverse action as it relates to Troy's Zoning Text Amendment 255.**

The allegations that comprise paragraphs 116-124; 130-133; 141-157 concern a Zoning Text Amendment that was passed by the Troy City Council on May 24, 2021. The Complaint alleges that Zoning Text Amendment ("ZOTA 255") "was directed to and specifically affected plaintiffs' properties." (Complaint at ¶ 117).  However, Plaintiffs were not subject to an adverse action because of ZOTA 255.

### a. *The Hills West project was approved.*

Plaintiffs' Complaint specifically alleges that ZOTA 255 adversely affected Plaintiffs' property located at 3902 Crooks Road. (Complaint at ¶119). As alleged in the Complaint, Plaintiffs' project associated with this property is known as "Hills West." (Complaint at ¶ 119, 122-123). The Complaint alleges that the site

---

territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

plan application for the Hills West project was submitted on October 14, 2021, after the ZOTA was approved. (Complaint at ¶130). The Hills West project was initially denied by Troy's Planning Commission for non-compliance with Troy's zoning ordinances on January 25, 2022. (Complaint at ¶ 132). However, a subsequent site plan for the same Hills West project on the same property site was approved by the Troy Planning Commission on January 24, 2023. (Exhibit C, Minutes of Planning Commission Meeting, January 24, 2023, Item No. 6, Resolution to approve Hills West site plan). This fact is not mentioned in Plaintiffs' instant Complaint. Therefore, the allegations contained in paragraphs 116-124; 130-133; 141-157 fail to allege that Plaintiffs were subject to an adverse action because of ZOTA 255.  The allegations in Plaintiffs' Complaint concerning ZOTA 255 as it applied to their Hills West project are insufficient to form the basis of a First Amendment retaliation claim because that project was approved.

### b.  The Westington Phase II project was approved.

Several of the allegations in the paragraphs enumerated above concerning the Hills West project also specifically refer to Plaintiff's project known as Westington Phase II. (Complaint at ¶¶ 130-133; 141-157).  The Complaint alleges the site plan for Westington Phase II was submitted on October 14, 2021. (Complaint at ¶130). Though the site plan for Westington Phase II was initially denied for failing to satisfy the City's ordinances, (Complaint at ¶ 141), similar to

the Hills West development, however, when revised site plans were submitted,

Westington Phase II was subsequently approved by Troy's Planning Commission

on February 14, 2023. Again, Plaintiffs neglected to clarify this in their pleading.

(Exhibit D, Minutes of Planning Commission Meeting, February 14, 2023, Item

No. 7, Resolution to approve Westington Phase II site plan). Troy's ZOTA 255 did

not adversely affect the Westington Phase II project; the project was approved.

As such, the paragraphs in Plaintiffs' Complaint referencing the denial of the

Westington Phase II project do not establish an adverse or retaliatory action

sufficient to form the basis of a First Amendment retaliation claim.

### 3. Adjustments made to the City's Master Plan, specifically the future land use map, do not adversely affect Plaintiffs.

In Paragraphs 138-140 and 159-164, Plaintiffs assert that adjustments made

to the City's Master Plan somehow adversely affect them. (Complaint at ¶ 164).

The Complaint alleges that during the City's Master Plan review process

amendments were proposed to the future land use map that were "directed solely

against plaintiffs." (Complaint at ¶¶ 162, 164). The purpose of the statutorily

mandated review of a Master Plan is to see if adjustments are required for the

City's policy document. (*See* MCL 125.3845(2) mandating review of a

municipality's Master Plan "at least every five years."). A Master Plan does not

modify the actual zoning of parcels in the City, including those owned by

Plaintiffs. The future land use map does not allocate specific uses on a parcel by

parcel basis.  It is, rather, a generic graphic used for illustrative purposes only. None of Plaintiffs' vested property rights will be or have been affected by the "adjustment" of the future land use map. Moreover, as of today, these are only proposed changes to Troy's Master Plan, which have not been finalized or approved. There have been public hearings over the last few months, and upon information and belief, not one named Plaintiff in this lawsuit has come forward to comment on the proposed Master Plan revisions. Plaintiffs' allegations concerning the proposed and unfinalized revisions to the Master Plan, including the future land use map, do not rise to the level of an adverse or retaliatory action, and are insufficient to form the basis of a First Amendment retaliation claim.

**4.** **The City's refusal to accept Tollbrook and Tollbrook West's straight rezoning applications in December of 2023 for Alpine and McClure does not constitute an actionable adverse action.**

Paragraphs 165-168 of the Complaint assert that the City of Troy's Planning Department improperly refused to accept and process its application for a *straight* rezoning request for Plaintiffs' Alpine and McClure properties.

Plaintiffs' applications were returned on or about January 4, 2024, and they were informed that the reason was the pending appeal of the case seeking the exact same relief in Michigan Court of Appeals. (Complaint at ¶ 168). (*See* Arg. Sec. I (A)(2)(a)(i) *above*).

As noted above, the parties remain engaged in litigation concerning whether the McClure and Alpine parcels should be rezoned from residential to BB zoning. Plaintiffs were advised that the pending appeal precluded Troy's processing of the application seeking the same zoning relief. If timing was the issue, Plaintiffs could have modified their request for relief to something other than a *straight* rezoning or they could have withdrawn their pending appeal.  They cannot now complain about their chosen legal strategy, or claim that the City's decision was retaliatory toward them.

**C.**  **The remaining paragraphs are not adverse actions taken against Plaintiffs sufficient to form the basis of a First Amendment retaliation claim.**

The remaining paragraphs in Plaintiffs' Complaint do not fit neatly into a category identified above, but none of them adequately allege either an adverse action or disparate treatment sufficient to form the basis of either claim. These remaining paragraphs 112-115; 125-129, and 134-137, describe disagreements and criticisms that Plaintiffs have with the City of Troy.

First, within these paragraphs, Plaintiff express their disappointment over the selection of two Troy citizens appointed the City's Planning Commission, one of whom, Mr. Rauch, no longer serves on the Commission. (Complaint at ¶¶ 112-115).  This allegation does not amount to an adverse action against Plaintiffs.

Plaintiffs also describe a dispute regarding the issuance of one single building permit, which was resolved within two days.  (Complaint at ¶¶ 125-129). At most, this is *de minimus*, and fails to establish a First Amendment claim.

Plaintiffs also criticize the City of Troy for its preference to communicate directly with Plaintiffs' attorneys of record while the lawsuits and complaints were pending.  The letter attached as Plaintiffs' Exhibit 42 speaks for itself.  Shortly before that letter was written, Plaintiff had written a brief that contained salacious, unsupported, and simply untrue accusations against specific members of Troy's City Administration, including its Planning Director. As such, the City decided to have all communication through the attorneys of record.  This is not an adverse action and does not support a First Amendment retaliation claim; nor does it form the basis of a disparate treatment claim.

Lastly, beginning at paragraph 169 and continuing to the end of the Complaint, these remaining paragraphs contain legal conclusions, and are not factual allegations which need to be construed most favorably to Plaintiffs.  As a final note, Plaintiffs allege at paragraph 178: "The City has made it clear that it will never let plaintiffs develop their properties." (Complaint at ¶ 178). This allegation is verifiably untrue based on the allegations contained within the instant Complaint.  As alleged in the Complaint, Plaintiffs have received approvals to

develop numerous projects, Westington, Westington Phase II, and Hills West,

within the City of Troy since Plaintiff Tollbrook filed its first lawsuit May of 2017.

## II.  **Plaintiffs' Equal Protection Claim**

The Equal Protection Clause "is 'essentially a direction that all persons

similarly situated should be treated alike.'" (*EJS Properties v. City of Toledo, et al,*

698 F.3d 845, 864 (6th Cir. 2012)(quoting *City of Cleburne v. Cleburne Living Ctr.*,

473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed.2d 313 (1985)).

"To state an equal protection claim, a plaintiff must adequately plead that the

government treated the plaintiff disparately as compared to similarly situated

persons and that such disparate treatment either burdens a fundamental right,

targets a suspect class, or has no rational basis." (*Ctr. for Bio–Ethical Reform, Inc.*

*v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Importantly, a plaintiff must

plead facts that plausibly negate the defendant's "likely non-discriminatory

reasons" for the disparate treatment. (*In re City of Detroit*, 841 F.3d 684, 701-702

(6th Cir. 2016)).     Plaintiffs' Complaint fails to satisfy these pleading

requirements. There are so few instances of alleged disparate treatment in

Plaintiffs' Complaint, it is difficult to ascertain what the complained of

discriminatory actions are. To try and better understand the Complaint,

undersigned counsel completed a thorough document word search for the words

"different,[6]" "disparate,[7]" "treat,[8]" "discrimination,[9]" and "equal.[10]"  Construing

the allegation in the light most favorable to the Plaintiffs', at best the instances

alleged in the Complaint are summarized as follows:

1. The Westington project was allegedly treated differently than another project. (Complaint at ¶¶ 94-96).

2. There was an issue concerning a permit. (Complaint at ¶ 126-29).

3. Concerns about communications being conducted through legal counsel while lawsuits are pending. (Complaint at ¶¶ 134-136).

Each of the three categories will be addressed.  Contrary to Plaintiffs'

assertion, the Westington project is not similarly situated to the project identified

as "Square Lake Court."  The two projects are situated in different zoning districts,

and the regulating plans found in Troy's Zoning Ordinance for each node are

distinct.  This fact is indisputable. As the exhibit to Complaint paragraph 95 shows,

the Square Lake Court project is located in Neighborhood Node N (NN – N).

(Exhibit M which is Exhibit 31 of Plaintiffs' Complaint); The Westington is

located in Neighborhood Node I (NN – I). (Exhibit O). Therefore, the development

projects are not similarly situated as Plaintiffs allege. It is important to note, even

---

[6] Found at ¶¶ 68, 72, 94, 173, 200-202.
[7] Found at ¶¶ 129, 135. This search also found an instance of "disparity."
[8] Found at ¶¶ 94, 96, 129, 134-136, and 158. This search found instances of "treated" and "treatment."
[9] No instances of the words "discriminate" or "discrimination" were found.
[10] Found at ¶¶ 38, 49, 173, 197-198, 206.

though not expressly alleged, that the distinction between NN–N and NN–I have nothing to do with religion.

Further, Plaintiffs' recitation in paragraph 94 is a self-serving spin on the allegation that the Westington project was being "treated differently."  As the exhibit that Plaintiffs attach to their Complaint shows, the City's concerns were directly tied to fears about violating Michigan's Open Meetings Act "OMA". (MCL 15.261 et seq.; *See also* Exhibit N).  The City expected a large turnout for public comment regarding the Westington project, and given the Governor's Emergency Executive Orders that were in place at the time, there were legitimate concerns about the City's ability to conduct the May 26, 2020 meeting remotely and in a way that would not violate the OMA. In fact, when the Westington project was considered in December of 2020, fifty concerned citizens provided email and phone messages in opposition to the project. (Exhibit O). Plaintiffs' allegations do not sufficiently allege an equal protection claim.

Similarly, the concerns raised by Plaintiffs' at paragraphs 126-129 about the issuance of a permit do not sufficiently allege an equal protection claim. According to the Complaint itself, the issue was resolved in two days with an email. (Complaint at ¶ 128, 129).

Lastly, Plaintiffs' allegations about communications being conducted between attorneys while Plaintiffs' other lawsuits were and remain pending does

not sufficiently demonstrate that the City was violating any Plaintiffs' equal

protection rights. This directive was solely for purposes of protecting all of the

parties. This decision was based on concerns addressed in Michigan Rules of

Professional Conduct 4.2. (Exhibit P).

There are no other factual allegations of disparate or unequal treatment made

by Plaintiffs. The allegations that are asserted in the Complaint fail to state a claim

upon which relief can be granted. Defendant City of Troy respectfully requests

this Court dismiss Plaintiffs' Complaint as it relates to alleged equal protection

violations.

III.   **Alternatively, Defendant seeks a more definite statement of Plaintiff's Equal Protection Claim pursuant to FED. R. CIV. P. 12(e).**

According to FED. R. CIV. P. 12(e), a party may move for a more definite

statement of a pleading where it is "so vague or ambiguous that the party cannot

reasonably prepare a response." As argued above, after a thorough review of the

allegations concerning equal protection violations, Plaintiff's Complaint is

woefully inadequate, if not also vague and ambiguous. If this Court disagrees that

dismissal is warranted under Fed. R. Civ. P. 12(e), in the alternative Defendant

Troy respectfully seeks a more definite statement from Plaintiffs to clarify the

nature of the disparate treatment sufficient to form a response to the claim.

## **CONCLUSION**

The City of Troy, Defendant in this case, respectfully request that this Honorable Court grant its Motion to Dismiss under FED. R. CIV. P. 12(B)(6) because Plaintiffs have failed to state a claim upon which relief can be granted. The forgoing legal and factual analysis makes it clear that dismissal of Plaintiffs claims is appropriate.  In the alternative, Defendant Troy seeks a more definite statement of Plaintiffs' equal protection claim FED. R. CIV. P. 12(e).

> Respectfully submitted,
> CITY OF TROY
>
> By:   s/Julie Quinlan Dufrane
>        JULIE QUINLAN DUFRANE (P59000)
>        City of Troy Attorney's office
>        Attorney for City of Troy
>        500 W. Big Beaver Road
>        Troy, MI 48084
>        (248) 524-3320

Dated: May 3, 2024       J.Dufrane@troymi.gov

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 3, 2024, I electronically filed

Defendant City of Troy's Motion to Dismiss, Brief in Support, and this Proof of

Service with the Clerk of the Court for the United States District Court for the

Eastern District of Michigan, Southern Division using the ECF system, and that the

ECF system will electronically notify the parties of record including Cindy Victor.


<u>s/Julie Quinlan Dufrane</u>
JULIE QUINLAN DUFRANE