## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**SAFET STAFA, TOLLBROOK, LLC,**
**TOLLBROOK WEST LLC,**
**TOLLBROOK NORTH, LLC, and**
**ARBAN STAFA,**

|  |  |
|---|---|
| **Plaintiffs,** | **Case No. 24-cv-10419** |
| **v.** | **HONORABLE MARK A. GOLDSMITH**<br>**DISTRICT COURT JUDGE** |
| **THE CITY OF TROY, MICHIGAN,** |  |
| **Defendant.** | **HONORABLE ANTHONY P. PATTI**<br>**MAGISTRATE JUDGE** |

## MOTION OF PLAINTIFFS FOR A TEMPORARY
## RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Plaintiffs Safet Stafa, Tollbrook, LLC, Tollbrook West, LLC, Tollbrook

North, LLC and Arban Stafa, by and through their attorneys, The Victor

Firm, PLLC, hereby bring this motion for a temporary restraining order and/

or order of preliminary injunction enjoining defendant the City of Troy,

Michigan ("the City"), from refusing to process and approve the preliminary

site plans for the Crooks Road Development/The Westbrook based on the

City's knowingly incorrect measurement of the height of the buildings in the

Crooks Road Development/The Westbrook.  Plaintiffs have tried repeatedly

for months to have the City process the preliminary site plans, only to be

delayed and delayed and repeatedly being told that the buildings are not of a correct height, even though the plans conform to the measurement of building height set forth in the City's Zoning Ordinance.

Plaintiffs seek an order of this Court compelling the City to properly measure the height of the buildings in the Crooks Road Development/The Westbrook and to process and approve the preliminary site plans. The basis for this motion is more fully explained in the accompanying brief in support. Plaintiffs have sought concurrence from the City Attorney in the relief requested in this motion pursuant to Local Rule 7.1, but concurrence was not forthcoming.

WHEREFORE, plaintiffs Safet Stafa, Tollbrook, LLC, Tollbrook West, LLC, Tollbrook North, LLC and Arban Stafa respectfully request that this Honorable Court grant their motion for a temporary restraining order and/or preliminary injunction, and order defendant the City of Troy to properly measure the height of the buildings in the Crooks Road Development/The Westbrook and to process and approve the preliminary site plans, and any other relief this Honorable Court deems appropriate under the circumstances.

Respectfully submitted,


/s/ Cindy Rhodes Victor
CINDY RHODES VICTOR (P33613)
The Victor Firm, PLLC
29777 Telegraph Road, Suite 2410
Southfield, Michigan  48034
(248) 905-3990
cvictor@victorfirm.com

Dated:  May 17, 2024          Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**SAFET STAFA, TOLLBROOK, LLC,**
**TOLLBROOK WEST LLC,**
**TOLLBROOK NORTH, LLC, and**
**ARBAN STAFA,**

        **Plaintiffs,**　　　　　　**Case No. 24-cv-10419**

**v.**　　　　　　　　　　　　**HON. MARK A. GOLDSMITH**
　　　　　　　　　　　　　　**DISTRICT COURT JUDGE**
**THE CITY OF TROY, MICHIGAN,**

        **Defendant.**　　　　　**HON. ANTHONY P. PATTI**
　　　　　　　　　　　　　　**MAGISTRATE JUDGE**


**BRIEF IN SUPPORT OF**
**MOTION OF PLAINTIFFS FOR A TEMPORARY**
**RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED

CITATION OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

INTRODUCTION

FACTUAL BACKGROUND

LEGAL STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

DISCUSSION

     I.    *PLAINTIFFS CAN DEMONSTRATE THE LIKELIHOOD OF SUCCESS ON THE MERITS*

          A.    *Violation of Plaintiffs' Equal Protection Rights*

          B.    *Retaliation Against Plaintiffs for Exercising Their First Amendment Rights*

     II.    *PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF THE PRELIMINARY INJUNCTION DOES NOT ISSUE*

     III.    *THE ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF WILL NOT CAUSE HARM TO OTHERS*

     IV.    *A PRELIMINARY INJUNCTION WILL SERVE THE PUBLIC INTEREST*

CONCLUSION

CERTIFICATE OF SERVICE

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether this Court should issue a temporary restraining order and/or preliminary injunction which enjoins defendant from taking any action during the pendency of this case to prevent plaintiffs from constructing a building on their property?

2.      Whether this Court should issue a temporary restraining order and/or preliminary injunction which compels defendant to properly measure the height of the buildings in the Crooks Road Development/The Westbrook and to process and approve plaintiffs' preliminary site plans?

3.      Whether plaintiffs have a likelihood of success on the merits of their claims?

4.      Whether plaintiffs will suffer irreparable harm if a temporary restraining order and/or preliminary injunction does not issue?

5.      Whether defendant can demonstrate any harm to others if a temporary restraining order and/or preliminary injunction issue?

6.      Whether the preliminary injunction will be in the best interests of the public?

## <u>CITATION OF CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

### ***<u>Case Citations</u>***

### ***<u>United States Constitution and Statutes</u>***

United States Constitution, Amend.  XIV

42 U.S.C. §1983

## INTRODUCTION

This is an action brought by plaintiffs Safet Stafa, Tollbrook, LLC, Tollbrook West, LLC, Tollbrook North, LLC and Arban Stafa against defendant the City of Troy, Michigan ("the City") for redress of the City's deprivation of plaintiffs' constitutionally rights protected by the First and Fourteenth Amendment, brought pursuant to 42 U.S.C. §1983.  Plaintiffs are now before this Honorable Court, respectfully requesting that this Court enter a temporary restraining order and/or preliminary injunction enjoining the City from treating plaintiffs differently than others who are similarly situated to plaintiffs and from engaging in further harassing and retaliatory activities against plaintiffs, including, but not limited to, taking actions to knowingly and improperly measuring the height of the buildings in the Crooks Road Development/The Westbrook and to delay unreasonably the processing and approval of plaintiffs' preliminary site plans, so that plaintiffs can continue construction of this project.

## FACTUAL BACKGROUND

Plaintiffs have been targeted for unconstitutional and wrongfully retaliatory actions by the City, as detailed in the Complaint (ECF No. 1, PageID.1-PageID.53).  As but a few examples, the City treated plaintiffs differently than the Monarch project with respect to plaintiffs' three parcels

of property located on the east side of McClure Road, north of Big Beaver, in the City of Troy (2.57 acres) ("the McClure Property").  The Monarch project is a tall tower with high-density residential development, which was so tall it had to obtain approval from the Federal Aviation Administration because of a nearby airport.  The City approved the Monarch project for two high-rise towers and townhomes but it was not completely built.  The property was sold to another developer and the City approved a Planned Unit Development which allowed a one-story strip mall and a row of detached site-condominiums, even though this was not consistent with the City's Master Plan or the BB District concept.

Plaintiffs wanted to develop the McClure Property, which is located within the area designed as BB (Big Beaver) District on the City Master Plan. as a multi-family housing project called "The Lofts."  Despite having the approval of the City Planning Commission, the City Council voted 4-3 to deny approval of The Lofts, for the reasons set forth more fully in the Complaint.

Believing that it had no other recourse, on May 4, 2017, Tollbrook, LLC filed a complaint alleging violation of its constitutional right to substantive due process pursuant to 42 U.S.C. §1983, among other claims.

- 2 -

Once Tollbrook, LLC filed suit, the City made it clear, through the actions taken against all plaintiffs from that date to the present, that Safet ("Sam") Stafa, his son Arban Stafa, and any company they owned would be stopped and delayed and hindered in any building project that any of the plaintiffs attempted in the City, in retaliation for plaintiffs having exercised their First Amendment rights by seeking redress through the courts, and that plaintiffs would be treated differently than other similarly situated individuals or entities in violation of their rights to equal protection of the law.  These actions are set forth in paragraphs 7-183 of the Complaint (ECF No. 1, PageID.4-PageID.45).

As but one example, on November 12, 2019, Sam Stafa entered into an Agreement of Sale conditioned on site plan approval, to purchase a 5.72-acre parcel on the west side of Crooks Road, just north of Wattles Road, in the City of Troy ("Crooks Road Townhomes Project").  Given what had occurred with the McClure Property and the later Alpine Drive Property, plaintiffs confirmed that the proposed use was permitted as a right and made sure that the site plans that they submitted to the City Planning Commission complied with the Neighborhood Nodes ("NN") District requirements.  Plaintiffs and their consultants were responsive to any request from the City.  The City continually delayed consideration of

the Crooks Road Townhomes Project.  The City created a special group

called the "Development Review Committee" to meet about the Crooks

Road Townhomes Project, even though no such committee was authorized

by the Zoning Ordinance, and refused to allow plaintiffs to attend the

Development Committee meeting, at which there was no agenda.

After repeated requests by plaintiffs, the Crooks Road Townhomes

Project was finally placed on the Planning Commission's agenda on

September 24, 2019, which then tabled the agenda item.

Plaintiffs then purchased a three (3) acre parcel to the south of the

Crooks Road Townhomes Project to avoid the access issue on which the

City had raised.  The City's planning consultant, Benjamin Carlisle, issued

a report dated January 7, 2020, which found that the proposed use was

appropriate for the site.

Yet at its January 14, 2020 meeting, the Planning Commission raised

different issues, causing plaintiffs to have to seek to have consideration of

the Crooks Road Townhomes Project postponed "to allow an opportunity to

respond to and investigate comments made this evening."  At this same

Planning Commission meeting, the next agenda item, "Square Lake Court

Townhomes," was also a three-story townhome project in a Neighborhood

Node (NN) District.  The Planning Commission approved this project's site

plan at this first meeting and allowed it to address any technicalities administratively.

The City continued to harass plaintiffs and delay their other projects, as set forth in the Complaint.  The City finally placed the Westington Project's preliminary site plan on the Planning Commission's agenda for the October 27, 2020 meeting after waiting since March 2020 for placement of the Westington Project on the agenda. The City finally placed the Crooks Road Townhomes Project's preliminary site plan on the Planning Commission's agenda for the November 10, 2020 meeting even though the revised preliminary site plan had been submitted on March 16, 2020.  The Planning Commission denied plaintiffs' request for approval of the preliminary site plan for the Crooks Road Townhomes Project, first using safety as a reason, and then when it was pointed out that plaintiffs met the safety requirement, it was changed to the unsubstantiated statements of "lack of compatibility and inadequate transition."  The Crooks Road Townhomes Project is the first time a permitted-by-right site plan application, which sought no variances, had ever been denied in the history of the City.

In May, 2021, the City scheduled a public hearing before the City Council on a Zoning Ordinance text amendment ("ZOTA 255").  The text

amendment set forth in ZOTA 255 substantially changed Section 5.06.E.3 of the Zoning Ordinance.  Section 5.06.E.3(c) added a new restriction that buildings on parcels abutting a one-family residentially zoned parcel could not exceed 2.5 stories and 30 feet in height.  It also added Section 5.06.E.3(d), "Setback and Greenbelt," which were not part of Section 5.06.E.3 before.  ZOTA 255 was directed to and specifically affected plaintiffs' properties.

One of the projects for which plaintiffs were preparing an application - Hills West, located at 3902 Crooks Road in the City of Troy - has no one-family homes adjacent to it, but it was adversely affected by ZOTA 255 because there was allegedly a one-family residentially zoned parcel adjacent to it, which actually was an unbuildable private road.  ZOTA 255 used the word "parcel" - which includes all parcels whether buildable or non-buildable - instead of "lot," which the Zoning Ordinance defines as "parcel of land occupied, or intended to be occupied by a main building or a group of such buildings and accessory buildings, or utilized for the principal use and uses accessory thereto, together with such open spaces as are required under the provisions of this Ordinance."

ZOTA 255, as applied, is invalid as it only targets 3902 Crooks Road - the Hills West Project, as it is the only property in a Neighborhood Node District that is not adjacent to one-family lots.

Plaintiffs submitted the Hills West and Westington Phase II Preliminary Site Plan application on October 14, 2021 for a combined 60-unit, two and one-half story multi-family apartments in four buildings.  Multi-family apartments are permitted by right in the Neighborhood Node (NN) District.  The Planning Commission on January 25, 2022 reviewed plaintiffs' site plan application and denied the application for Hills West and Westington Phase II based on subjective and vague reasoning without explanation or support, even though the project fully complied with the NN zoning standards as well as the newly enacted ZOTA 255 (Exhibit 41).

At this point in time, the only projects in the history of the City of Troy that were permitted uses by right that were denied were plaintiffs' projects - the Crooks Road Townhomes Project, Hills West and Westington Phase II.

These are but just a few examples of the disparate treatment and retaliatory actions which the City has taken against plaintiffs, giving rise to the instant lawsuit.  Yet, despite the filing of this action, the City has not stopped the harassing, retaliatory actions and disparate treatment of plaintiffs, which has occasioned the filing of this motion.

Specifically as to this motion plaintiffs submitted the application for approval of the preliminary site plans for the Crooks Road Development/ The Westbrook on August 18, 2023. The City has repeatedly refused to process the application because of alleged issues with the building height. On January 30, 2024, Arban Stafa wrote to Troy Community Development Director Brent Savidant and the City's consultant, Benjamin Carlisle, in response to Carlisle's email correspondence indicating that the height of the building did not comply with the Zoning Ordinance (a copy of the email correspondence from Arban Stafa to Benjamin Carlisle and Brent Savidant, January 30, 2024, is attached hereto as Exhibit 1). Arban Stafa made it clear that the building height *did* comply with the Zoning Ordinance and included both the definitions from the Zoning Ordinance and the illustrations contained in the Zoning Ordinance (*Id.*). Yet the City would not process the application.

So plaintiffs were forced to make changes, yet the City still would not process the application, allegedly because of building height. On March 1, 2024, Arban Stafa wrote to Carlisle and Savidant requesting the planning report (a copy of the email correspondence chain among Arban Stafa, Benjamin Carlisle and Brent Savidant, March 1 - March 13, 2024, is attached hereto as Exhibit 2). On March 12, 2024, Carlisle wrote back,

indicating that the buildings exceeded 30 feet "at the peak of the buildings" (*Id.*). On March 13, 2024, Arban Stafa sent detailed email correspondence which set forth the definition of Building Height under the Zoning Ordinance and the Zoning Ordinance's illustrations, which made it clear that gable roofs are not measured to the peak, but to the "average height between eaves and ridge for gable, hip, and gambrel roofs," and that under the Zoning Ordinance's definition, the elevations were all below 30 feet (*Id.*).

Having received no response from the City, on March 26, 2024, Arban Stafa asked Carlisle and Savidant for an update as to processing the application (a copy of the email correspondence chain among Arban Stafa, Benjamin Carlisle and Brent Savidant, March 26 - April 5, 2024, is attached hereto as Exhibit 3). Carlisle advised Stafa that he and Savidant would talk to the City Manager, who was also the Zoning Administrator, for his "interpretation" (*Id.*). Having heard nothing by April 5, 2024, Arban Stafa again asked for an update (*Id.*).

On April 9, 2024, City Manager Mark Miller, who was also acting as Zoning Administrator, sent a letter to plaintiffs, stating

> I serve as the City of Troy Zoning Administrator. I have reviewed the Crooks Road Development (Westbrook) plan set application, dated February 29, 2024. I have found that the development does not comply with Section 5.06.3.c [*sic*]:

> *Any building, <u>or portion of a building</u>, on a parcel*
> *abutting a one-family residentially zoned parcel*
> *shall not exceed 2.5 stories, 30 feet in height.*

Multiple portions of the building(s) as measured from the foundation to the peak of the roof exceed 30 feet in height.

(a copy of the correspondence from City Manager Mark Miller to Arban Stafa, April 9, 2024, is attached hereto as Exhibit 4).

But the City Manager's "interpretation" does not comport with the Zoning Ordinance.  Article 2 of the Zoning Ordinance sets forth definitions, which include "Building Height."  The Zoning Ordinance states: "The term 'building height' shall mean the vertical distance as measured from the established grade to the highest point of the roof for flat rooms, including walls or parapets that extend above the horizontal roof surface; to the deck line of mansard roofs; and to the average height between eaves and ridges for gable, hip and gambrel roofs."  The definition provides how to measure grade for sloping terrains, and at no place mentions "foundation."

As to City Manager Miller's statement that the building is "as measured from the foundation to the peak of the roof," that is also contrary to the specific definition in the Zoning Ordinance.  The Zoning Ordinance definition of "Building Height" includes illustrations of types of roofs. Comparing the plans for the Crooks Road Development/The Westbrook to these illustrations shows that the Crooks Road Development/The

Westbrook has what the Zoning Ordinance would call "gable roofs." Under the definition of "Building Height," the measurement should be not to the peak of the gable roof, but "to the average height between eaves and ridges for gable, hip and gambrel roofs."

Based upon the clear language in the Zoning Ordinance, the Crooks Road Development/The Westbrook preliminary site plans conform to Section 5.06(E)(3)(c)(i). On April 26, 2024, counsel for plaintiffs wrote to the City Attorney to bring this matter to the City's attention, but received no response, thereby compelling the filing of this motion. Counsel for plaintiffs also discussed this motion with the Assistant City Attorney to seek concurrence prior to the filing of this motion, to no avail.

Plaintiffs submit that the City does not have any legitimate basis to continue to refuse to process and approve the preliminary site plans for the Crooks Road Development/The Westbrook.

## LEGAL STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

The Court must consider four factors in deciding whether to issue a preliminary injunction: (1) the likelihood of the plaintiff's success on the merits; (2) whether the preliminary injunction would save the plaintiff from irreparable injury; (3) whether issuance of the preliminary injunction would harm others; and 4) whether the public interest would be served by

issuance of a preliminary injunction.  *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1175 (6th Cir. 1995); *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994).

None of these four factors is a prerequisite to the issuance of a preliminary injunction; rather the Court must balance the four factors in deciding the propriety of preliminary injunctive relief.  *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). None of these factors is dispositive; nor must each one be satisfied before the Court may grant the relief requested.  *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).  The extent to which a party must demonstrate a likelihood of success varies inversely with the degree of harm the party will suffer absent an injunction.  *Cincinnati Sub-Zero Prod. v. Augustine Med.*, 800 F. Supp. 1549, 1557 (S.D. Ohio 1992) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978), *cert. dismissed*, 442 U.S. 925 (1979)).

## DISCUSSION

## I.  PLAINTIFFS CAN DEMONSTRATE THE LIKELIHOOD OF SUCCESS ON THE MERITS

In their complaint, plaintiffs set forth several causes of action against the City.  In their causes of action, brought through the means of 42 U.S.C. §1983, plaintiffs maintain that the City deprived them of their

constitutionally-protected rights to equal protection of the law and retaliated against them for exercising their First Amendment rights.  While not a source of substantive rights, 42 U.S.C. § 1983 provides a remedy for the deprivation or unlawful violation "of any rights, privileges, or immunities secured by the Constitution and laws."

To prove a claim under §1983, a plaintiff must establish it was deprived of a right secured by the United States Constitution or laws of the United States, and that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law.  *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).  Generally, a public employee acts under the color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.  *West v. Adkins*, 487 U.S. 42, 50 (1988); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).

The United States Supreme Court has held that the Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985).

Specifically as to this motion, plaintiffs submit that the City treated them differently than other similarly-situated developers by measuring the

building height in a manner which is both contrary to the specific definitions and illustrations in the Zoning Ordinance and which is different than the way that the City has measured the building height of buildings of similarly-situated developers.  As but a few examples, the City's review of the following projects not owned or developed by plaintiffs show that the developments have gable roofs and have been measured from grade to midpoint:

Long Lake Square

Square Lake Court

Village of Troy Planned Unit Development

MNK Troy 1, LLC

Center Court.

These are but a few examples - in addition, every single-family gabled roof home in the City of Troy has been measured in accordance with the definition in the Zoning Ordinance, not as set forth in City Manager Miller's letter which was applied only to plaintiffs.  The City measured the height of these buildings in accordance with the Zoning Ordinance's definition of "Building Height" in Article 2.  Yet, it is only plaintiffs' project which the City has applied a method of measurement which is contrary to the specific language and illustrations set forth in Article 2 of the Zoning Ordinance.

In this case, plaintiffs maintain that the evidence at the hearing on their motion for injunctive relief will show that they were selectively treated differently by the City based on unlawful considerations and that the City took retaliatory actions against them for their exercise of their First Amendment rights.  There is no basis for the City to insist that the Crooks Road Development/The Westbrook should be measured to the peak of its gabel roof, which is clearly contrary to the specific language in the Zoning Ordinance.  Accordingly, plaintiffs will be able to demonstrate that they have a likelihood of success on the merits of their claims for deprivation of their rights to equal protection of the law and for First Amendment retaliation.

## II.  PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF THE PRELIMINARY INJUNCTION DOES NOT ISSUE

As set forth in the motion and in the factual background section of this brief, plaintiffs will suffer irreparable injury if the preliminary injunction does not issue.  The City cannot deny that by its actions to date, plaintiffs cannot proceed with the Crooks Road Development/The Westbrook. The City's unconstitutional interference with plaintiffs' business has already cost plaintiffs a substantial amount of money, and the longer the delays go on, the more expensive the construction materials will cost plaintiffs.  This interference with plaintiffs' business expectations cannot be adequately

compensated monetarily, for until plaintiffs can construct the building and obtain tenants to occupy it, plaintiffs' losses will continue unabated.

## III. THE ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF WILL NOT CAUSE HARM TO OTHERS

In requesting this preliminary injunction, plaintiffs submit to this Court that there is no evidence that anyone will suffer harm from the issuance of the injunctive relief which plaintiffs seek from this Court - a temporary restraining order and/or preliminary injunction enjoining the City from engaging in further harassing and retaliatory activities against plaintiffs, including, but not limited to, properly measuring the height of the buildings in the Crooks Road Development/The Westbrook and to process and approve the preliminary site plans.  Given that the City's Zoning Ordinance mandates the very method of measurement which plaintiffs want to have the City apply, the City cannot claim that issuance of the injunctive relief which plaintiffs seek will cause harm to anyone.  Without such showing of harm, the City has no ground on which to oppose entry of the preliminary injunctive relief which plaintiffs seek from this Court.

## IV. A PRELIMINARY INJUNCTION WOULD SERVE THE PUBLIC INTEREST

The preliminary injunction which plaintiffs seek from this Court would also serve the public interest.  A preliminary injunction in the nature which

plaintiffs seek would maintain, during the pendency of the instant case, that the laws would be equally enforced and equally applied to all.  It would also ensure that the City would not be permitted, during the pendency of this case, to deny plaintiffs and other similarly situated entities their constitutional rights.

## CONCLUSION

Plaintiffs submit that they have met all four elements necessary for this Court to issue a temporary restraining order and/or preliminary injunction.  Plaintiffs have a likelihood of success on the merits of their causes of action against the City.   A preliminary injunction will act to save plaintiffs from further irreparable injury.  A preliminary injunction in the nature of which plaintiffs seek will not harm others, and it is in the best interest of the public.  Accordingly, plaintiffs respectfully request that this Court grant their motion and issue a temporary restraining order and/or preliminary injunction enjoining the City from engaging in further harassing and retaliatory activities against plaintiffs, including, but not limited to, compelling the City to properly measure the height of the buildings in the Crooks Road Development/The Westbrook and to process and approve the preliminary site plans.

Respectfully submitted,

/s/ Cindy Rhodes Victor
CINDY RHODES VICTOR (P33613)
The Victor Firm, PLLC
29777 Telegraph Road, Suite 2410
Southfield, Michigan  48034
(248) 905-3990
cvictor@victorfirm.com

Dated:  May 17, 2024                    Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**SAFET STAFA, TOLLBROOK, LLC,**
**TOLLBROOK WEST LLC,**
**TOLLBROOK NORTH, LLC, and**
**ARBAN STAFA,**

        **Plaintiffs,**          **Case No. 24-cv-10419**

**v.**                      **HON. MARK A. GOLDSMITH**
                           **DISTRICT COURT JUDGE**

**THE CITY OF TROY, MICHIGAN,**

                      **HON. ANTHONY P. PATTI**
        **Defendant.**        **MAGISTRATE JUDGE**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 17th day of May, 2024, I electronically filed the foregoing Motion of Plaintiffs for a Temporary Restraining Order and/or Preliminary Injunction, with this Certificate of Service, with the Clerk of the Court using the ECF system, which will serve this pleading to the City Attorney for the City of Troy, Michigan.

                                    /s/ Steven R. McCollum
                                    Steven R. McCollum
                                    The Victor Firm, PLLC
                                    29777 Telegraph Road, Suite 2410
Dated:  May 17, 2024           Southfield, Michigan  48034
                                    (248) 905-3990
                                    mccollum@victorfirm.com