UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAFET STAFA et al.,

        Plaintiffs,

v.

CITY OF TROY,

        Defendant.

_____/

Civil Case No. 24-cv-10419

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Dkt. 16)**

Plaintiffs Safet (Sam) Stafa, Tollbrook, LLC, Tollbrook West, LLC, Tollbrook North, LLC, and Arban Stafa bring claims against Defendant City of Troy under 42 U.S.C. § 1983 for First Amendment retaliation and for a violation of the Equal Protection clause based on alleged religious discrimination. Before the Court is the City's motion to dismiss (Dkt. 16) Plaintiffs' amended complaint (Dkt. 14). For the reasons that follow, the Court grants in part and denies in part the City's motion.[1]

## I.    BACKGROUND

Plaintiff Sam Stafa is the agent for Plaintiff entities Tollbrook, LLC; Tollbrook West, LLC; and Tollbrook North, LLC. Am. Comp. ¶ 7. Arban Stafa is Sam Stafa's son, who works with Sam. Id. ¶ 39. Sam and Arban Stafa are both Muslim. Id. ¶¶ 1, 5. Plaintiffs have submitted

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes the Plaintiffs' response (Dkt. 18) and the City's reply (Dkt. 19).

1

numerous rezoning and other development-related applications to the City, with varying degrees of success.

The first zoning application relevant to this action was a 2016 request for conditional rezoning related to Plaintiffs' McClure Property.[2] Id. ¶ 10. After the City ultimately denied the application, in 2017, Plaintiff Tollbrook[3] filed a lawsuit against the City before this Court alleging, among other things, a substantive due process violation. See id. ¶¶ 33, 38; Tollbrook v. City of Troy, No. 17-11417 (E.D. Mich). The Court dismissed the complaint, and the Sixth Circuit Court of Appeals affirmed the dismissal. Since that case was decided, Plaintiffs submitted additional applications, requests, and site plans to the City for approval, related to Plaintiffs' McClure Property and Alpine Drive Property, see Am. Compl. ¶¶ 42–53; Crooks Road Townhomes Project, see id. ¶¶ 54–80, 97, 116–119; Westington Project, see id. ¶¶ 85–96, 98–115, 123–125; Hills West Project, see id. ¶¶ 135, 150–158, 166; and Westington Phase II Project, see id. ¶¶ 150–158, 166.[4] Plaintiffs take issue with the City's actions in connection with these development-related submissions, as well as with the City's adoption of a zoning ordinance text amendment (ZOTA 255), alleging that it was "directed to and specifically affected [P]laintiffs' properties." Id. ¶ 131.

Plaintiffs filed this case in February 2024, alleging that the City's actions towards them, specifically regarding their development proposals, the zoning amendment, and engagement and

---

[2] Throughout their amended complaint, Plaintiffs refer to their "McClure Property," "Alpine Drive Property," "Crooks Road Townhomes Project," "Westington Project," "Hills West Project," and "Westington Phase II." The Court adopts these labels throughout its opinion.

[3] Plaintiffs do not specify which Tollbrook entity was the plaintiff in that case. See Am. Compl. ¶ 38.

[4] Plaintiffs have filed cases in state court based on actions taken by the City on those requests. See Mot. at 1.

communications with Plaintiffs, violate the First Amendment and Equal Protection Clause of the United States Constitution.

The City has filed a motion to dismiss, arguing that (i) Plaintiffs' claims are partially barred by the statute of limitations, (ii) Plaintiffs' claims are barred by res judicata, (iii) Plaintiffs have not sufficiently alleged adverse action for purposes of their First Amendment retaliation claim, and (iv) Plaintiffs have not sufficiently alleged an equal protection violation. For the below reasons, the Court denies the City's motion to dismiss as to the First Amendment retaliation claim and grants the motion to dismiss as to the Equal Protection claim.

## II.     ANALYSIS

The Court first addresses the City's arguments that Plaintiffs' claims are barred by the applicable statute of limitations and by the doctrine of res judicata. Finding those arguments to be without merit, the Court then turns to the sufficiency of Plaintiffs' allegations regarding their constitutional claims brought pursuant to 42 U.S.C. § 1983.[5]

### A.     Statute of Limitations

In its motion to dismiss, the City asserts that Plaintiffs' claims "may . . . be time-barred by the statute of limitations," as "[i]t is well-established that Michigan's three-year statute of limitations applies to § 1983 claims." Mot. at 4. The City states that two of the denials at issue occurred on July 22, 2019 and one occurred on November 10, 2020—more than three years before this suit was filed. Id. The City claims that all remaining development projects have either been approved or remain pending. Id.

---

[5] Plaintiffs also argue in their response brief that this Court should strike the exhibits attached to the City's motion to dismiss as improper evidence to be considered alongside a motion to dismiss. The Court decides this motion without consideration of the exhibits, so it need not decide whether they were properly included.

3

But the City fails to develop this argument in its briefing. While the City does point out that some of the denials listed in the complaint occurred more than three years before the complaint was filed, see Br. Supp. Mot. at 14, it does not explain how these denials would trigger the statute of limitations for each of Plaintiffs' claims. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir. 1997) (punctuation modified); see also Rivet v. State Farm Mut. Auto Ins. Co., 316 F. App'x 440, 449 (6th Cir. 2009) (declining to address "arguments that . . . are unsupported or underdeveloped"). Because the City addressed the argument in only a "perfunctory manner," the Court will not dismiss the complaint on statute of limitations grounds.

**B.     Res Judicata**

The City also argues that allegations in the complaint relating to facts and issues raised in Plaintiffs' prior lawsuits cannot form the basis of either a retaliation or a discrimination claim in this case, as they are barred by res judicata. Br. Supp. Mot. at 9–10. "Claim preclusion, or true res judicata, refers to [the] effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because of a determination that it should have been advanced in an earlier action. Issue preclusion, [also called collateral estoppel,] on the other hand, refers to the foreclosure of an issue previously litigated." Mitchell v. Chapman, 343 F.3d 811, 819 n. 5 (6th Cir. 2003). The City proceeds under both theories. The City first argues that the amended complaint should be barred in full, and argues in the alternative that the Court should strike certain paragraphs of the amended complaint for "restat[ing] allegations and issues that have been or could have been previously litigated." Br. Supp. Mot. at 9–14.

A claim is barred by claim preclusion where (i) there has been a final decision on the merits by a court of competent jurisdiction, (ii) the subsequent action is between the same parties or persons in privity with those parties, (iii) the claim in the subsequent action was litigated or should have been litigated in the prior action, and (iv) there is identity between the causes of action. Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 879–880 (6th Cir. 1997). Issue preclusion is triggered where (i) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (ii) the same parties had a full and fair opportunity to litigate the issue, and (iii) there exists mutuality of estoppel. Watermark Senior Living Ret. Communities, Inc. v. Morrison, 905 F.3d 421, 426 (6th Cir. 2018) (citing Monat v. State Farm Ins. Co., 677 N.W.2d 843, 845–846 (Mich. 2004)). The burden of establishing the applicability of res judicata is on the party asserting the doctrine. Browning v. Levy, 283 F.3d 761, 772 (6th Cir. 2002) (citing In re Piper Aircraft Corp., Inc., 244 F.3d 1289, 1296 (11th Cir. 2001)).

The City has not met its burden to demonstrate that the elements of either type of preclusion are met here. Rather than address each element and explain how it applies, the City appears to argue only that no facts raised in prior related litigation can be raised in the current litigation. See Br. Supp. Mot. at 9–14. The City does not contend that Plaintiffs brought claims for First Amendment retaliation or religious discrimination in violation of the Equal Protection Clause in prior lawsuits. The City does state that Plaintiffs "had a full and fair opportunity to litigate the issue of religious discrimination in the 2017 case," Br. Supp. Mot. at 11, and that "[i]f Plaintiffs believed they were being discriminated against because of Arban and Sam Stafa's religion, they could have and should have pursued those allegations in the prior litigation," Br. Supp. Mot. at 14. However, the City does not sufficiently develop these contentions. See Owusu v. Mich. Dep't of Corrs. Pain Mgmt. Comm., No. 16-cv-12490, 2017 WL 8893594, at *4 (E.D. Mich. Aug. 21, 2017)

5

report and recommendation adopted, 2018 WL 774152 (E.D. Mich. Feb. 8, 2018) (finding a defendant had not met its burden of establishing that res judicata applied where the defendant offered "conclusory arguments, without more" regarding whether the claims asserted by the plaintiff in the case at hand were actually litigated, or should have been litigated, in the previous action). Therefore, the City has not alleged claim preclusion.

Similarly, the City has failed to identify any issues that were litigated to a final decision on the merits in any of the previous cases that Plaintiffs attempt to raise again here. Additionally, as Plaintiffs point out in response, the City has not established identity of the parties between prior actions and this one, as the named plaintiffs, while they overlap, are not exactly the same. Resp. at 13. Defendants have not met their burden to establish that either claim or issue preclusion applies.

The City requests, in the alternative, that the Court strike certain factual allegations in the complaint, on res judicata grounds. Br. Supp. Mot. at 14. The City argues that the denials Plaintiffs complain about at paragraphs 42–53, 54–79, 97, 110, 116–122, and 153 of their amended complaint "cannot serve as the basis of their claims here" because they "relate to facts and issues raised in Plaintiffs' six prior lawsuits which have already been decided or are pending in other courts." Br. Supp. Mot. at 10. But because res judicata applies to claims and issues—not to facts—the City's argument is without foundation.

Because the City has not satisfied its burden, the Court will not dismiss Plaintiffs' claims on res judicata grounds, nor will it strike the allegations in the complaint.

### C. Claims Brought Under 42 U.S.C. § 1983

#### 1. First Amendment Retaliation

In their amended complaint, Plaintiffs allege that the City has exhibited a pattern of retaliation against Plaintiffs for filing their 2017 lawsuit, in violation of the First Amendment. See Am. Compl. ¶¶ 237–248. To succeed on their First Amendment retaliation claim, Plaintiffs must show that (i) they engaged in protected conduct, (ii) an adverse action was taken against them that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) there is a causal connection between elements one and two. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

The protected conduct alleged by Plaintiffs is "exercis[ing] their First Amendment rights to seek redress from the courts." See Am. Compl. ¶¶ 223, 241–243. The City does not dispute that filing a lawsuit is protected action—and it has been established by the Sixth Circuit. See Bell v. Johnson, 308 F.3d 594, 607 (6th Cir. 2002). Instead, the City argues that Plaintiffs' retaliation claim should be dismissed for failure to allege adverse action. See Br. Supp. Mot. at 14–21. The Court disagrees, finding the Plaintiffs have sufficiently alleged adverse action.

While the City acknowledges that "[w]hether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact," it argues that here the claim is properly dismissed as a matter of law because any alleged adverse action is "inconsequential" and resulting in merely a "de minimis injury." Br. Supp. Mot. at 8. In support of this argument, the City notes that Plaintiffs clearly have not been chilled or silenced from either submitting proposed development projects for consideration or from filing lawsuits, as they have continued in both activities since filing the 2017 lawsuit. Id. at 8–9.

But as Plaintiffs note in their response brief, whether Plaintiffs were in actuality chilled

7

from engaging in this kind of activity is irrelevant to the question of whether they have pleaded adverse action for the purposes of a First Amendment retaliation claim. See Resp. at 8 (citing Kubala v. Smith, 984 F.3d 1132, 1139–1140 (6th Cir. 2021). "The adverse action need not actually chill or silence the plaintiff's First Amendment activities. Nor must the plaintiff possess an Olympian fortitude. A plaintiff need only show that the adverse action would deter a person of ordinary firmness from exercising his First Amendment rights." Kubala, 984 F.3d at 1139–1140.

Further, the Sixth Circuit has found zoning permit denials—of the sort Plaintiffs allege— to constitute adverse action in the context of a First Amendment retaliation claim. In Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 728 (6th Cir. 2010), for example, the court found that a denial of an application for a zoning variance was "probably sufficient to state a claim of retaliation inasmuch as the possibility of a zoning variance or a signage variance necessary for operating a business as planned would deter a person of ordinary firmness from exercising First Amendment rights." In so finding, the court stated that "[t]he denial of the variances directly impacts Plaintiff's ability to conduct her business in the manner of her choosing, which is a threat to her economic livelihood." Id. Another judge in this district cited Fritz in stating that "[t]he denial of a proposed land use may be a sufficient adverse action to support a First Amendment retaliation claim." Shavers v. Almont Twp., No. 18-cv-12096, 2020 WL 999022, at * 14 (E.D. Mich. Mar. 2020).

While it remains to be seen whether Plaintiffs' allegations will ultimately establish adverse action, they plausibly allege adverse actions at this stage. The Court will not dismiss the First Amendment claim at this stage.[6]

---

[6] The City does not argue lack of causation in connection with the First Amendment claim, so the Court does not address it.

## 2. Equal Protection Violation

Plaintiffs also allege that the City has violated the Equal Protection Clause of the Fourteenth Amendment. See Am. Compl. ¶¶ 249–259. They allege that Plaintiffs "were treated adversely and differently than other property owners, who were similarly situated to plaintiffs, based on plaintiffs' religion" and that the "City has a pattern and practice of treating Muslims differently than other similarly-situated[,] and adversely." Id. ¶¶ 253, 259.

To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment (i) burdens a fundamental right, (ii) targets a suspect class, or (iii) has no rational basis. Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365 (6th Cir. 2011). Plaintiffs here appear to bring a claim under the second theory, arguing that they were treated differently on the basis of their religion.[7] Am. Compl. ¶ 253.

"The threshold element of an equal protection claim is disparate treatment[.]" Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006). To plead disparate treatment on the basis of religion, Plaintiffs would have to allege that other applicants similarly situated in all ways, except for their religion, were treated more favorably. Further, the disparate treatment must be intentional. Salloum v. Kable, No. 19-cv-13505, 2020 WL 7480549, at *18 (E.D. Mich. Dec. 18, 2020).

Regarding disparate treatment, the amended complaint points to one example involving a similarly-situated comparator who was not Muslim. See Am. Compl. ¶¶ 55–79. Specifically,

---

[7] Plaintiffs also state that they were "treated adversely and differently than other property owners, who were similarly situated to plaintiffs, and plaintiffs constitute a class of one." Am. Compl. ¶ 255. However, in their response brief, Plaintiffs clarify that their claim is based on the theory that the City has discriminated against them because they are Muslim. Resp. at 20–21.

9

Plaintiffs compare the City's delayed review of their Crooks Road Townhome projects and Westington project with the City's prompt approval of the Square Lake Court Townhomes project submitted by the non-Muslim developer. See id. Plaintiffs allege that the Square Lake Court Townhomes developers were treated "substantially more favorably" than Plaintiffs because they "were not Muslim and had not exercised First Amendment rights to seek redress as to the City's actions." Id. ¶ 78. The favorable treatment allegedly received by the Square Lake Court Townhomes developers was that the planning commission "approved this project's site plan at this very first meeting and allowed it to address any technicalities administratively." Id. ¶ 75.

The City counters that the Square Lake Court Townhomes developers were not similarly-situated, as the Square Lake Court Townhomes project was located in a different zone from the Crooks Road Townhome projects and the Westington Project. Br. Supp. Mot. at 22. In response, Plaintiffs argue that whether a comparator's projects are similarly situated generally requires factual development. Resp. at 23 (citing Ryan v. City of Detroit, 698 F. App'x 272, 280 (6th Cir. 2017) ("A plaintiff's proposed comparators need not be exactly similarly situated, and the question of whether persons are similarly situated may in some cases be a question of fact for a jury.").

But the Court need not decide whether Plaintiffs successfully alleged disparate impact, as their claim must be dismissed regardless for failure to sufficiently allege intent. See Evans v. Washington, No. 19-cv-953, 2019 WL 6974735, at *9 (W.D. Mich. Dec. 20, 2019) (finding a plaintiff had failed to state a claim for an equal protection violation based on religious discrimination where he alleged disparate impact but not discriminatory intent); Weberg v. Franks, 229 F.3d 514, 428 (6th Cir. 2000) ("[M]ere disparate impact is not sufficient to state an equal protection claim under § 1983.").

In their amended complaint, Plaintiffs state numerous times that the City's actions were taken "because plaintiffs are Muslim[.]" See e.g., Am. Compl. ¶¶ 125, 128. But "conclusory allegations of discriminatory intent without additional supporting details do[] not sufficiently show that the pleader is entitled to relief." Nali v. Ekman, 355 F. App'x 909, 913 (6th Cir. 2009). The only attempt to add specific factual allegations relating to discriminatory attempt appears to be Plaintiffs' reference to a local politician, Andrew Raczkowski. According to Plaintiffs, Raczkowski "constantly referred to [Plaintiff] Sam Stafa as 'that Muslim builder,'" at which point the City began to treat him adversely. Id. ¶¶ 30–31. Plaintiffs allege that, once Raczkowski labeled Sam Stafa "that Muslim builder," Sam Stafa "began to hear that expression from others." Am. Compl. ¶ 30. However, as the City points out in its reply brief, Reply at 6, Plaintiffs have not alleged Raczkowski is associated with the City planning commission. Plaintiffs have also not alleged facts indicating that City actors were aware of Plaintiffs' religion when making decisions or that they participated in using the alleged label.

As further evidence of animus, in their response brief, Plaintiffs raise a separate lawsuit against the City in which another judge in this district addressed allegations against the City by a plaintiff Muslim non-profit entity claiming religious discrimination. See Resp. at 22 (citing Adam Community. Ctr. v. City of Troy, 2022 WL 4541630 (E.D. Mich. Sept. 28, 2022)). Plaintiffs provide no authority to indicate why another case should be considered as evidence of discriminatory intent in this case.

Plaintiffs' allegations of discriminatory intent are insufficient to state a claim for violation of the Equal Protection Clause. For that reason, the Court finds that Plaintiffs have failed to allege a violation of the Equal Protection Clause and grants the City's motion as to this claim.

### III. CONCLUSION

For the above reasons, the Court grants the City's motion to dismiss as to the claim for violation of the Equal Protection Clause and denies the City's motion to dismiss as to the claim for First Amendment retaliation (Dkt. 16).

SO ORDERED.

Dated: February 25, 2025
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge